**E-FILED**
Monday, 01 August, 2005  03:28:34 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| CENTRUE BANK, an Illinois commercial bank, | ) ) | |
| *Plaintiff,* | ) ) | |
| v. | ) ) | No. |
| GARY A. GERBERDING, an individual; PREMIER DATA SOLUTIONS, INC., an Illinois corporation; UNKNOWN OWNERS; and NON-RECORD CLAIMANTS, | ) ) ) ) ) | |
| *Defendants.* | ) | |

## COMPLAINT

For its Complaint in this cause, plaintiff Centrue Bank, by its attorneys, the Law Office of Terry Sharp, P.C., alleges as follows.

### Preliminary Statement

1.  Plaintiff in this case seeks judgments against defendants for moneys obtained and withheld from it by fraud, racketeering and other wrongful conduct.  Counts I-IV detail a pattern of racketeering activity including, *inter alia,* numerous instances of bank fraud, and assert causes of action under the Racketeer-Influenced & Corrupt Organizations Act, 18 U.S.C. Chapter 96 ("RICO"), with respect to a demand deposit account which was part of a check-kiting scheme, a Letter of Credit which was fraudulently obtained, and two loans taken from plaintiff and its predecessor respectively.  Counts V-VIII assert claims for fraud arising out of the same conduct as Counts I-IV respectively. Count IX seeks remedies for breach of contracts, including foreclosure of a mortgage.

### Jurisdiction and Venue

2.  This Court has subject matter jurisdiction over Counts I-IV under 18 U.S.C. §

1964(c) (RICO) and 28 U.S.C. § 1331 (general federal question jurisdiction).   The Court has subject matter jurisdiction over Counts V-IX under 28 U.S.C. § 1367 in that these counts, though sounding in state law, are so related to and intertwined with Counts I-IV that they form part of the same case or controversy under Article III of the U.S. Constitution and hence are within the Court's supplemental jurisdiction.

3.  Venue lies in this district pursuant to 28 U.S.C. § 1391(b).

<u>The Parties</u>

4.   Plaintiff Centrue Bank ("Centrue") is a commercial bank chartered by the State of Illinois, with its principal place of business at Kankakee, Illinois.  Centrue is, among other things, the  successor to an entity known  as Kankakee Federal Savings Bank ("KFSB") prior to its acquisition by a predecessor of Centrue.

5.  Defendant Premier Data Solutions, Inc. ("Premier") is a for-profit corporation organized under Illinois law, with its principal place of business in Kankakee, Illinois. Premier's registered agent for service of process is Robert W. Boyd, One Dearborn Square #400, Kankakee, Illinois.

6.  Defendant Gary A. Gerberding ("Gerberding") is a natural person residing at 2279 River Road in Kankakee, Illinois.  Gerberding is the president, secretary and controlling shareholder of Premier.

<u>Count I: Action Under 18 U.S.C. § 1964(c)</u>
<u>With Respect to Demand Deposit Account 1001018438</u>

1-6.  Plaintiff incorporates by reference ¶¶ 1-6 above as ¶¶ 1-6 of this Count I.

7.  In or about 1992, Gerberding organized Premier for the alleged purpose of offering computer-related services to persons and businesses in the Kankakee area. Among the services offered or purportedly offered by Premier are or have been network

engineering, network integration, phone systems, computer programming, custom software development, web design, web hosting, kiosk systems, hardware sales, technical services and consulting.

8.   On or about July 7, 2000, Premier opened demand deposit account No. 1001018438 at KFSB as a checking account for Premier.   Thereafter, account 1001018438 became an account of Premier at Centrue by virtue of Centrue's acquisition of the operations of KFSB.

9.   Some time prior to 2000, Gerberding had Premier commence offering payroll processing services for other businesses.   In connection with those services, Gerberding established an account at First American Bank in Kankakee ("First American"), the purpose of which was to contain moneys of customers of the payroll processing service for use in payroll operations, including retention of  withholdings, collection of  payroll taxes, and payment of same to state and federal authorities.

10.   At some time not presently known to Centrue, Gerberding, for Premier, established another account at the National Bank of St. Anne ("NBSA").

11. In 2000, revenues of Premier dropped and expenses commenced exceeding revenues.   To support himself and to pay expenses of the non-payroll operations of Premier, Gerberding began accessing the funds in the First American customer payroll account.   A principal method of doing so was to write checks on the First American account and deposit them in a Premier account elsewhere, transferring equivalent funds back to the customer payroll account when they were needed in the payroll operations.

12.   Premier's financial condition worsened, and the size of its payroll processing operation decreased.   As a result, the amount of customer funds deposited into the First

American account decreased while the accumulated operating deficits, which had to be financed, increased.  In or about 2002, Gerberding commenced use of a scheme which is commonly known as check kiting, to wit, the drawing of checks on an account in one bank and depositing them into an account at a second bank when neither account has sufficient funds to cover the amounts drawn, avoiding the checks being returned NSF by the second bank by the deposit at that bank of additional insufficiently-funded checks shortly before the first group of checks is presented for payment.  See, *e.g., In re Cannon*, 277 F.3d 838, 844 n. 3 (6th Cir. 2002), and authorities there cited.  Such a process gives the appearance of the depositor having funds because banks tentatively credit a deposit to the deposit account before the check has been presented to and paid from the account upon which it is drawn. See, *e.g., NBT Bank, N.A. v. First Nat'l Comm. Bank*. 393 F.3d 404, 407 and n. 3 (3rd Cir. 2004).  Check kiting is a form of bank fraud.  See *First Nat'l Bank v. Colonial Bank*, 898 F. Supp. 1220, 1222 and n. 1 (N.D. Ill. 1995), and authorities there cited.  Compare *Williams v. United States,* 458 U.S. 279, 281 n. 1 (1982); *United States v. Doherty,* 969 F.2d 425, 428-29 (7th Cir. 1992).

13.   To effectuate the check-kiting scheme, from 2002 to 2005  Gerberding accessed, used and manipulated account 1001018438, the customer payroll processing account at First American, and the Premier account at NBSA, writing insufficiently-funded checks upon one to cover insufficiently-funded checks previously drawn on another, in a continuous process of musical chairs which was not apparent until June 2005.  By that time the amount of the kite – *i.e.,* the funds for which checks were written in excess of the actual funds on deposit – exceeded $400,000.

14.  On June 7, 2005, Gerberding made deposit to account 1001018438 of some

$233,184 to cover previously-written, insufficiently-funded checks drawn on account 1001018438. However, the deposit was made after the cut-off time for transactions effective June 7, 2005, and thus was considered made on June 8, 2005. As a result, at the opening of business June 8, 2005 Premier's account 1001018438 showed an over-draft of some $224,379, which was brought to management's attention.

15.    The deposit made late on June 7, 2005 consisted completely of checks drawn on the NBSA and First American accounts.

16.    On the afternoon of June 8, 2005, Gerberding deposited to account 1001018438 some $298,836, consisting principally of checks drawn on Premier's NBSA and First American accounts.

17.    On June 9, 2005, Centrue confronted Gerberding. Gerberding admitted that he had been kiting checks between account 1001018438 and the accounts at First American and NBSA since 2002 and that the accumulated insufficiency exceeded $400,000. As a result, Centrue refused to credit the deposits of kited checks made June 7, 2005 and June 8, 2005 and returned same.

18.    After crediting of deposits of properly-funded checks from other sources, set-offs and other credits, Gerberding had written and Centrue had paid checks on account 1001018438 $154,009.96 in excess of valid deposits.

19.    Centrue has made demand for Gerberding and Premier to cover the over-draft on account 1001018438 in the amount of $154,009.96 but they have not done so.

20.    18 U.S.C. § 1964(c) provides in pertinent part that any person injured in his business or property by reason of a violation of 18 U.S.C. § 1962 "may sue therefor in any appropriate United States district court and shall recover threefold the damages he

- 5 -

sustains and the cost of the suit, including a reasonable attorney's fee".

21.  18 U.S.C. § 1962 provides in pertinent part:

(c)  It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

22.  "Racketeering activity" within the meaning of 18 U.S.C. § 1962 means, among other things, any act which is indictable under 18 U.S.C. § 1341 (relating to mail fraud), § 1343 (wire fraud), or § 1344 (bank fraud).  18 U.S.C. § 1961(1).

23. 18 U.S.C. § 1344 provides:

Whoever knowingly executes, or attempts to execute, a scheme or artifice—

(1) to defraud a financial institution; or

(2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;

shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

24. 18 U.S.C. § 1341 provides in pertinent part:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, . . . for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

25.  18 U.S.C. § 1343 provides:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.  If the violation affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

26.  A "pattern of racketeering activity" as used in 18 U.S.C. § 1962 means two or more acts of racketeering activity, one of which occurred after the effective date of 18 U.S.C. Chapter 96 and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity.  18 U.S.C. § 1961(5).

27.  An "enterprise" as used in 18 U.S.C. § 1962 includes any individual, partnership, corporation, association, or other legal entity.  18 U.S.C. § 1961(4).

28.  From and after 2002 Premier constituted an enterprise within the meaning of 18 U.S.C. § 1961(4).

29.  From and after 2002 Premier engaged in, and had activities which affected, interstate or foreign commerce within the meaning of 18 U.S.C. § 1962(c), in that Premier, among other things:

(a)      sold and offered for sale products manufactured in foreign countries;

(b)      sold and offered for sale products of suppliers in other states;

(c)      sold and offered for sale software, technology and services of persons in other states;

(d)      utilized the instrumentalities of interstate communication, including but not limited to the interstate telephone system, the U.S. Mail and the internet,

in and for its business;

(e)     purchased and attempted to purchase products, software, technology and services from outside the state of Illinois; and

(f)     otherwise engaged in and had activities which affected interstate and foreign commerce within the meaning of 18 U.S.C. § 1962(c).

30.   From and after 2002, Gerberding caused Premier to engage in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962 in that he caused Premier:

(a)     to commit multiple acts of bank fraud within the meaning of 18 U.S.C. § 1344, by knowingly executing a scheme or artifice to defraud KFSB, Centrue, First American and NBSA, by and through the check-kiting scheme set forth above, and pursuant to that scheme and artifice, *inter alia*:

(1)     presented more than 100 checks for deposit to account 1001018438 drawn on the First American and NBSA accounts when there were not collected or properly collectable funds in such accounts to cover those checks;

(2)     presented for deposit in Premier's accounts at First American and NBSA more than 100 checks drawn on account 1001018438 for which neither he nor Premier had sufficient collected or properly collectable funds on deposit;

(3)     concealed the fraud recited in (1) above by then causing to be deposited into the NBSA account checks drawn on account 1001018438 and the First American account for which neither he nor Premier had sufficient collected or properly collectable funds on

deposit;

(4)     further concealed the fraud recited in (1) above by then causing to be deposited into the First American account checks drawn on account 1001018438 and the NBSA account for which neither he nor Premier had sufficient collected or properly collectable funds on deposit;

(5)     further concealed the fraud recited in (1) above by making the deposits through a multiplicity of relatively small checks instead of a few large checks which would draw attention (for example, for the deposit of approximately $233,184 attempted on June 7, 2005, Gerberding wrote nine separate checks, each less than $30,000, even though they were written on only two bank accounts);

(6)     concealed the fraud recited in (2) above by depositing into account 1001018438 checks drawn on the First American and NBSA accounts when there were not collected or properly collectable funds in such accounts to cover those checks;

(7)     further concealed the fraud alleged in (1) to (5) above by submitting to Centrue and its predecessor financial statements which falsely failed to show the true financial situation of the business;

(b)     to commit additional acts of bank fraud within the meaning of 18 U.S.C. § 1344, by, among other things, using payroll account funds, held in trust for the taxing authorities, payroll processing customers, and employees of those businesses, for his and Premier's own purposes;

- 9 -

(c)     to commit multiple acts of mail fraud within the meaning of 18 U.S.C. § 1341 by, *inter alia,* having devised a scheme or artifice to defraud, for the purpose of executing such scheme or artifice:

(1)     placed in authorized U.S. mail depositories matter to be sent or delivered by the Postal Service, including but not limited to bills, statements of account, statements of withholding and other documents relating to the payroll processing account which was being abused for his and Premier's own purposes;

(2)     took or received from the U.S. Mail monthly statements, accountants' inquiries and other matter with respect to account 1001018438 and the First American and NBSA accounts;

(3)     knowingly caused to be delivered by mail or private or commercial interstate carrier, according to the direction thereon, and at the place at which it is directed to be delivered by the person to whom it is addressed, payments to third parties in the form of checks which were not backed by collected or properly collectable funds but which cleared only because of the false but apparent positive balances achieved in account 1001018438 and the First American and NBSA accounts by the check-kiting scheme set forth above;

(4)     utilized the United States Mail to deliver to KFSB false and misleading financial statements;

(d)     to commit multiple acts of wire fraud within the meaning of 18 U.S.C. § 1343 by, having devised a scheme or artifice to defraud, for the purposes

of executing such scheme or artifice:

(1)     utilized the interstate telephone system, including but not limited to use of such system June 8, 2005 to represent to Centrue that the overdraft should be covered by the deposit he made June 7, 2005;

(2)     utilized the internet, including but not limited to (i) use of the internet to monitor the level of funds in the accounts so as to know when and how much to deposit in the form of kited checks; and (ii) use of internet sites www.premierdata.net and www.capitalpay.com to suggest to customers that they could access their payroll account balances when in fact Gerberding and Premier were abusing and embezzling the funds supposedly reflected in those balances.

31.     The acts of racketeering set forth in the preceding paragraph occurred after the effective date of 18 U.S.C. Chapter 96 and within the last ten years, and constituted a pattern of racketeering within the meaning of 18 U.S.C. § 1962.

32.  While employed by and associated with the enterprise Premier, and while it was engaged in and affecting interstate and foreign commerce, Gerberding conducted and participated in the conduct of Premier's affairs through the aforesaid pattern of racketeering, in violation of 18 U.S.C. § 1962(c).

33.  As a result of the aforesaid violation of 18 U.S.C. § 1962(c), Centrue has been injured in its business and property and has sustained damages in the amount of the $154,009.96 overdraft of account 1001018438.

WHEREFORE, plaintiff Centrue Bank prays the Court to enter judgment for it and against defendant Gary A. Gerberding in the amount of $462,029.88 plus its attorneys'

fees and costs.

Count II: Action Under 18 U.S.C. § 1964(c)
With Respect to Hewlett-Packard Letter of Credit

1-32.   Centrue incorporates ¶¶ 1-32 of Count I as ¶¶ 1-32 of this Count II.

33.   In or about April 2005 Gerberding, for Premier, approached Centrue about financing of a major acquisition of a computer equipment and software from Hewlett-Packard Company.   When he did so, Gerberding knew that Premier was not in fact paying its bills when due through collected or properly collectable funds, but was doing so through the above-referenced check-kiting scheme; that the kiting insufficiency was at or approaching $400,000; and that the stated balances in account 1001018438, the NBSA account, and the First American account were illusory.

34.   Moreover, when Gerberding approached Centrue about financing Premier's acquisition of the equipment and software from Hewlett-Packard, he knew or should have known that he and Premier were or could become liable for substantial penalties for mishandling of the funds in the First American account; for substantial penalties for the violations of 18 U.S.C. §§ 1341, 1343, 1344 and 1962 alleged above; and for substantial additional debts incurred or to be incurred in the course of Premier's business.

35. Notwithstanding the foregoing, in his discussions with Centrue regarding the financing for the equipment and software from Hewlett-Packard, Gerberding concealed the true financial position of Premier; falsely represented that it was solvent; and warranted that there had been no material adverse change in Premier's financial condition as disclosed in its most recent financial statement submitted to Centrue.

36.   Notwithstanding the true financial position of Premier, and notwithstanding

his concealment thereof, Gerberding, for Premier, on April 22, 2005 made application to Centrue for a letter of credit in favor of Hewlett-Packard in the amount of $189,542.  A true copy of the Application and Agreement for Irrevocable Letter of Credit submitted by Gerberding is attached hereto as <u>Exhibit A</u>.  In connection therewith, Gerberding and Premier also delivered to Centrue the Promissory Note a true copy of which is attached hereto as <u>Exhibit B</u>, the Disbursement Request and Authorization a true copy of which is attached hereto as <u>Exhibit C</u>, and the Commercial Security Agreement a true copy of which is attached hereto as <u>Exhibit D</u>.

37.  In reliance on the false statements of Premier and Gerberding, Centrue on April 22, 2005 issued Irrevocable Letter of Credit No. LTR169, a true copy of which is attached hereto as <u>Exhibit E</u>, which was thereafter accepted by Hewlett-Packard.

38.  In reliance on the aforesaid Letter of Credit and upon the promises of Gerberding and Premier, Hewlett-Packard did thereafter sell to Premier or its assigns substantial equipment and software for which Premier became obligated to pay Hewlett-Packard not less than  $189,542.00.

39.  Premier failed to pay Hewlett-Packard for the equipment and software.  On June 24, 2005, Hewlett-Packard made demand upon said Letter of Credit, and as a result thereof Centrue was required to pay to Hewlett-Packard, for the benefit of Premier, the sum of $189,542.00.

40.  Pursuant to <u>Exhibits A and B</u>, Premier promised to repay Centrue in full immediately for any amounts paid out by Centrue under the Letter of Credit.  Centrue has made demand on Premier for payment as promised, but it has failed to comply.

41.  The false statements and the omissions of material fact committed by

Gerberding, for Premier, in connection with the issuance of the Letter of Credit constituted additional acts of bank fraud within the meaning of 18 U.S.C. § 1344.

42.   The additional acts of bank fraud referenced in the preceding paragraph constituted additional acts of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1) and 1962(c), and additional parts of a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(5) and 1962(c), in connection with an enterprise in interstate or foreign commerce within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c).

43.   As a result of said violation of 18 U.S.C. § 1962(c), Centrue has been injured in its business and property and has sustained damages in the amount of $190,831.94 due at July 29, 2005 under the agreements for the fraudulently-obtained Letter of Credit.

WHEREFORE, plaintiff Centrue Bank prays the Court to enter judgment for it and against defendant Gary A. Gerberding in the amount of $572,495.82 plus its attorneys' fees and costs.

## Count III: Action Under 18 U.S.C. § 1964(c)
### With Respect to Note #530296

1-42.   Centrue incorporates ¶¶ 1-42 of Count II as ¶¶ 1-42 of this Count III.

43.   In or about April 2000 Gerberding approached KFSB seeking a loan for the purpose of refinancing a mortgage on property at 1090 Lesco Road in Kankakee, which was Premier's headquarters.

44.   In obtaining that refinancing, Gerberding executed and delivered to KFSB the Variable Rate Commercial Promissory Note a true copy of which is attached hereto as Exhibit F, and caused Premier to execute and deliver to KFSB the Commercial Continuing Guaranty (Unlimited) a true copy of which is attached hereto as Exhibit G.

45.  Under the Variable Rate Commercial Promissory Note, <u>Exhibit F</u>, Gerberding agreed that he would be in default if in the future he "provides or causes any false or misleading signature or representation to be provided to Lender".

46.  Commencing not later than 2002, Gerberding regularly provided to KFSB and its successor Centrue, and regularly caused to be provided to same, false and misleading signatures and representations, in that, without limitation:

(a)     the checks submitted to account 1001018438 were signed by Gerberding on behalf of Premier as maker or drawer and were not post-dated, which constituted the crime of deceptive practice if there were not funds in the accounts upon which they were drawn sufficient to pay the same at the time of issuance and delivery (720 ILCS 5/17-1(B)(d));

(b)     under the Uniform Commercial Code, 810 ILCS 5/3-415(a), in indorsing same to KFSB/Centrue, Gerberding and Premier represented that upon dishonor they would pay the check, when in fact their inability to pay such amounts was the very reason they were depositing kited checks; and

(c)     under the Uniform Commercial Code, 810 ILCS 5/3-416(a), in signing the checks and transferring them to KFSB/Centrue for consideration, Gerberding and Premier warranted to KFSB/Centrue that they were entitled to enforce the checks, that all signatures thereon were genuine, and that there was no defense good against them.

47.  The submission of the kited checks with false and misleading signatures and representations constituted events of default under the Variable Rate Commercial Promissory Note, <u>Exhibit F</u>, entitling KFSB and its successor Centrue to declare all the

obligations of Gerberding due and payable in full, to collect all the outstanding obligations of Gerberding without resorting to judicial process, to take possession of collateral for such obligations, to set off the unpaid obligations against moneys in Gerberding's personal bank account, and to exercise other rights under the law.

48.   Gerberding and Premier fraudulently concealed the misrepresentations alleged in ¶ 46 above, fraudulently concealed the events of default alleged in ¶ 47 above, and fraudulently concealed KFSB/Centrue's right to exercise the powers referenced in ¶ 47, by, *inter alia*, concealing the check-kiting scheme and the insufficiency of the checks through the acts set forth in ¶¶ 30(a)(3)-(5) and 30(a)(7) above.

49.   The misrepresentations set forth in ¶ 46 above also constituted acts of bank fraud within the meaning of 18 U.S.C. § 1344.

50.   The acts of bank fraud referenced in the preceding paragraph constituted acts of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1) and 1962(c), and parts of a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(5) and 1962(c), in connection with an enterprise in interstate or foreign commerce within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c).

51.   Upon discovery of the check-kiting scheme, Centrue made demand for payment upon the Variable Rate Commercial Promissory Note, Exhibit F, and upon the Commercial Continuing Guaranty (Unlimited), Exhibit G, but by then the financial condition of Premier had deteriorated and payment has not been made.

52.   As a result of the aforesaid violation of 18 U.S.C. § 1962(c), Centrue has been injured in its business and property and has sustained damages in the amount of the $146,663.65 due, owing and unpaid on the Variable Rate Commercial Promissory

Note as of July 29, 2005.

WHEREFORE, plaintiff Centrue Bank prays the Court to enter judgment for it and against defendant Gary A. Gerberding in the amount of $439,990.95 plus its attorneys' fees and costs.

<u>Count IV: Action Under 18 U.S.C. § 1964(c)</u>
<u>With Respect to Note #530254</u>

1-51.  For ¶¶ 1-51 of this Count IV, Centrue incorporates ¶¶ 1-51 of Count III.

52. On or about April 28, 2000, Premier entered into with KFSB the Commercial/Agricultural Revolving or Draw Note a true copy of which is attached hereto as <u>Exhibit H</u>, by which Premier obtained a line of credit for operating expenses and in which it promised, among other things, to pay to KFSB "the aggregate unpaid principal amount of all loans or advances made by the Lender to the Borrower, plus interest on the unpaid principal balance".

53.  On or about June 29, 2001, Premier entered into the Extension and Amendment to Commercial/Agricultural Promissory Note a true copy of which is attached hereto as <u>Exhibit I</u>, promising to pay KFSB $398,084.21 in principal due under <u>Exhibit H</u> in monthly payments from August 1, 2001 and continuing to July 1, 2008.

54.  In the Commercial/Agricultural Revolving or Draw Note, <u>Exhibit H</u>, Gerberding, for Premier, agreed that it would be in default if in the future Premier "provides or causes any false or misleading signature or representation to be provided to Lender".

55.  Commencing not later than 2002, Gerberding for Premier regularly provided to KFSB and its successor Centrue, and regularly caused to be provided to same, false and misleading signatures and representations, in that, without limitation:

(a)     the checks submitted to account 1001018438 were signed by Gerberding

on behalf of Premier as maker or drawer and were not post-dated, which constituted the crime of deceptive practice if there were not funds in the accounts upon which they were drawn sufficient to pay the same at the time of issuance and delivery (720 ILCS 5/17-1(B)(d));

(b)    under the Uniform Commercial Code, 810 ILCS 5/3-415(a), in indorsing same to KFSB/Centrue, Gerberding and Premier represented that upon dishonor they would pay the check, when in fact their inability to pay such amounts was the very reason they were depositing kited checks; and

(c)    under the Uniform Commercial Code, 810 ILCS 5/3-416(a), in signing the checks and transferring them to KFSB/Centrue for consideration, Gerberding and Premier warranted to KFSB/Centrue that they were entitled to enforce the checks, that all signatures thereon were genuine, and that there was no defense good against them.

56.  The submission of the kited checks with false and misleading signatures and representations constituted events of default under the Commercial/Agricultural Revolving or Draw Note, Exhibit H, entitling KFSB and its successor Centrue to declare all the obligations of Premier due and payable in full, to collect all the outstanding obligations of Premier without resorting to judicial process, to take possession of collateral for such obligations, and to exercise other rights available to Lender under the law.

57.  Gerberding and Premier fraudulently concealed the misrepresentations alleged in ¶ 55 above, fraudulently concealed the events of default alleged in ¶ 56 above, and fraudulently concealed KFSB/Centrue's right to exercise the powers referenced in ¶ 56, by, *inter alia,* concealing the check-kiting scheme and the insufficiency of

the checks through the acts set forth in ¶¶ 30(a)(3)-(5) and 30(a)(7) above.

58.  The misrepresentations set forth in ¶ 55 above also constituted acts of bank fraud within the meaning of 18 U.S.C. § 1344.

59.  The acts of bank fraud referenced in the preceding paragraph constituted acts of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1) and 1962(c), and parts of a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(5) and 1962(c), in connection with an enterprise in interstate or foreign commerce within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c).

60.  Upon discovery of the check-kiting scheme, Centrue made demand for payment on the Commercial/Agricultural Revolving or Draw Note, <u>Exhibit H</u>, but by then the financial condition of Premier had deteriorated and payment has not been made.

61.  As a result of the aforesaid violation of 18 U.S.C. § 1962(c), Centrue has been injured in its business and property and has sustained damages in the amount of the $60,881.62 due, owing and unpaid on the Commercial/Agricultural Revolving or Draw Note as of July  29, 2005.

WHEREFORE, plaintiff Centrue Bank prays the Court to enter judgment for it and against defendant Gary A. Gerberding in the amount of $182,644.86 plus its attorneys' fees and costs.

<u>Count V:  Fraud Action Under State Law</u>
<u>With Respect to Demand Deposit Account 1001018438</u>

1-19.  Centrue incorporates ¶¶ 1-19 of Count I as ¶¶ 1-19 of this Count V.

20-22.  Centrue incorporates ¶¶ 23-25 of Count I as ¶¶ 20-22 of this Count V.

23-24.  Centrue incorporates ¶¶ 29-30 of Count I as ¶¶ 23-24 of this Count V.

25. Centrue incorporates ¶ 55 of Count IV as ¶ 25 of this Count V.

26. Centrue incorporates ¶ 57 of Count IV as ¶ 26 of this Count V.

27. The frauds perpetrated on KFSB and its successor Centrue by Gerberding and Premier were willful, deliberate and outrageous, and justify the assessment against them of punitive damages.

28. As a proximate result of the frauds perpetrated by Gerberding and Premier, Centrue has sustained damages in the amount of the $154,009.96 overdraft of account 1001018438.

WHEREFORE, plaintiff Centrue Bank prays the Court to enter judgment for it and against defendants Gary A. Gerberding and Premier Data Solutions, Inc. for $154,009.96 actual damages, plus punitive damages in an amount sufficient to punish the misconduct and to deter such conduct in the future, plus attorneys' fees and costs.

<u>Count VI: Fraud Action Under State Law</u>
<u>With Respect to Hewlett-Packard Letter of Credit</u>

1-26. Centrue incorporates ¶¶ 1-26 of Count V as ¶¶ 1-26 of this Count VI.

27-35. Centrue incorporates ¶¶ 33-41 of Count II as ¶¶ 27-35 of this Count VI.

36. Centrue incorporates ¶ 27 of Count V as ¶ 36 of this Count VI.

37. As a proximate result of the frauds perpetrated by Gerberding and Premier, Centrue has sustained damages in the amount of the $189,542.00 paid to Hewlett-Packard under the fraudulently-obtained Letter of Credit, plus interest.

WHEREFORE, plaintiff Centrue Bank prays the Court to enter judgment for it and against defendants Gary A. Gerberding and Premier Data Solutions, Inc. for

$190,831.94 actual damages plus punitive damages in an amount sufficient to punish the misconduct and to deter such conduct in the future, plus attorneys' fees and costs.

Count VII:  Fraud Action Under State Law
With Respect to Note #530296

1-35.  Centrue incorporates ¶¶ 1-35 of Count VI as ¶¶ 1-35 of this Count VII.

36-52.  Centrue incorporates ¶¶ 43-49 of Count III as ¶¶ 36-52 of this Count VII.

53.   Centrue incorporates ¶ 27 of Count V as ¶ 53 of this Count VII.

54.     As the proximate result of the frauds perpetrated by Gerberding and Premier, Centrue has sustained damages in the amount of $146,663.65 due, owing and unpaid on the Variable Rate Commercial Promissory Note as of July 29, 2005.

WHEREFORE, plaintiff Centrue Bank prays the Court to enter judgment for it and against defendants Gary A. Gerberding and Premier Data Solutions, Inc. for $146,663.65 actual damages, plus punitive damages in an amount sufficient to punish the misconduct and to deter such conduct in the future, plus attorneys' fees and costs.

Count VIII:  Fraud Action Under State Law
With Respect to Note #530254

1-52.  Centrue incorporates ¶¶ 1-52 of Count VII as ¶¶ 1-52 of this Count VIII.

53-61.  Centrue incorporates ¶¶ 52-60 of Count IV as ¶¶ 53-61 of this Count VIII.

62.  Centrue incorporates ¶ 27 of Count V as ¶ 62 of this Count VIII.

63.     As the proximate result of the frauds perpetrated by Gerberding and Premier, Centrue has sustained damages in the amount of the $61,181.62 due, owing and unpaid on the Commercial/Agricultural Revolving or Draw Note as of July 29, 2005.

WHEREFORE, plaintiff Centrue Bank prays the Court to enter judgment for it and

against defendants Gary A. Gerberding and Premier Data Solutions, Inc. for $61,181.62 actual damages, plus punitive damages in an amount sufficient to punish the misconduct and to deter such conduct in the future, plus attorneys' fees and costs.

<u>Count IX:  Breach of Contracts and</u>
<u>Foreclosure of Mortgage Under State Law</u>

1.  Plaintiff files this complaint to foreclose the *Commercial Mortgage* (hereinafter called "mortgage") hereinafter described and joins the following person as defendants: Gary A. Gerberding, an individual; Premier Data Solutions, Inc., an Illinois corporation; Unknown Owners and Non-record Claimants.

2.   Attached as Exhibit "J" is a copy of the mortgage and as the following-indicated Exhibits are copies of the following instruments secured thereby:

<u>Exhibit B</u> - *Promissory Note* No. 56270-2 dated April 22, 2005

<u>Exhibit F</u> - *Variable Rate Commercial Promissory Note* dated April 28, 2000

<u>Exhibit H</u> - *Commercial/Agricultural Revolving or Draw Note* dated April 28, 2000

<u>Exhibit I</u> - *Extension and Amendment to Commercial/Agricultural Promissory Note* dated June 29, 2001

<u>Exhibit K</u> - *Business Account Agreement* dated July 6, 2000

<u>Exhibit L</u> - *Commercial Guaranty* by Gary A. Gerberding of all obligations of Premier Data Solutions, Inc., dated June 8, 2005

3.  Information concerning mortgage pursuant to 735 ILCS 5/15-1504:

(A)   <u>Nature of instrument:</u>  Commercial Mortgage.

(B)   <u>Date of mortgage</u>:  April 28, 2000

(C)    <u>Name of mortgagor</u>:  Gary A. Gerberding

(D)    <u>Name of mortgagee</u>:  Kankakee Federal Savings Bank

(E)    <u>Date and place of recording</u>:  Kankakee County Recorder of Deeds May 5, 2000

(F)    <u>Identification of recording</u>: 20007193

(G)    <u>Interest subject to the mortgage</u>: Fee simple

(H)    <u>Amount of original indebtedness, including subsequent advances made under the mortgage</u>: Mortgage secured an original indebtedness in the amount of $190,000.00 principal, plus "all other present or future obligations of Borrower or Granter to Lender (whether incurred for the same or different purposes)".  As to amounts due under various instruments secured by the Mortgage, see ¶ (J) below.

(I)    <u>The legal description of the mortgaged real estate and the common address or other information sufficient to identify it with reasonable certainty</u>:

<u>Legal description</u>:  Commencing at the Northwest corner of Lot 5 of the R.O. Danforth Estates being a part of Sections 28, 29 and 33 in Township 31 North, Range 12 East of the Third Principal Meridian in Kankakee County, Illinois, as surveyed by L.C. Looker and recorded in surveyors Book 2, Page 228 and 229 in the Kankakee County Recorder's Office; thence East along the North line of said Lot 5, 256.0 feet to a point; thence South 0 degrees 55 minutes East, 250.0 feet to a point; thence South 0 degrees 54 minutes East, 305.25 feet to a point, said point to be known as the point of beginning. The detailed description of the tract is as follows: From said point of beginning; thence North 89 degrees 13 minutes East, 223.35 feet to a point; thence South 0 degrees 36 minutes East, 139.89 feet to a point; thence South 89 degrees 13 minutes West, 222.7 feet to a point; thence North 0 degrees 54 minutes west 140.16 feet to the point of beginning.

<u>Common Address:</u>  1090 Lesco Road, Kankakee, Illinois

(J)   <u>Statement as to defaults, including, but not necessarily limited to,</u>
<u>date of default, current unpaid principal balance, per diem interest</u>
<u>accruing, and any further information concerning the default:</u>

(i)   As to the *Business Account Agreement*, Exhibit K, see ¶¶ 1-
19 of Count I above.   Demand made on *Commercial*
*Guaranty,* Exhibit L, July 22, 2005, and remains unsatisfied.
Balance due $154,029.88.

(ii)   As to the *Promissory Note*, Exhibit B, see ¶¶ 33-40 of Count
II above.   Demand made on *Commercial Guaranty,* Exhibit
L, July 22, 2005, and remains unsatisfied.   Balance due
$190,831.94 as of July 29, 2005, plus additional interest as
accrues at the rate of $36.86 per day thereafter.

(iii)   As to the *Variable Rate Commercial Promissory Note,*
Exhibit F, see ¶¶ 43-48, 51 of Count III above.  Balance due
$146,663.65 as of July 29, 2005, plus additional interest as
accrues at the rate of $26.82 per day thereafter.

(iv)   As to the *Commercial/Agricultural Revolving or Draw Note,*
Exhibit H, and the *Extension and Amendment to*
*Commercial/Agricultural Promissory Note,* Exhibit I, see ¶¶
52-57 of Count IV above.   Demand made on *Commercial*
*Guaranty,* Exhibit L, July 22, 2005, and remains unsatisfied.

Balance due $60,881.62 as of July 29, 2005, plus additional interest as accrues at the rate of $11.29 per day thereafter.

(K)    <u>Name of present owner of the real estate</u>:  Gary A. Gerberding

(L)    <u>Names of other persons who are joined as defendants and whose interest in or lien on the mortgaged real estate is sought to be terminated</u>:  Premier Data Solutions, Inc.; Non-record Claimants; Unknown Owners

(M)    <u>Names of defendants claimed to be personally liable for deficiency</u>:  Gary A. Gerberding and Premier Data Solutions, Inc.  Premier is liable for the obligations of Gerberding under the *Commercial Continuing Guaranty (Unlimited)* attached as Exhibit G.

(N)    <u>Capacity in which plaintiff brings this foreclosure</u>:  Plaintiff Centrue Bank is successor in interest by acquisition of original mortgagee Kankakee Federal Savings Bank

(O)    <u>Facts in support of redemption period shorter than the longer of (i) 7 months from the date the mortgagor or, if more than one, all the mortgagors (I) have been served with summons or by publication or (II) have otherwise submitted to the jurisdiction of the court, or (ii) 3 months from the entry of the judgment of foreclosure, if sought (here indicate whether based upon the real estate not being residential, abandonment, or real estate value less than 90% of amount owed, etc.)</u>:  The real estate is not residential.  The real

- 25 -

estate's value is less than 90% of the amount owed.  At ¶ 25 of the mortgage, mortgagor waived any and all rights of redemption.

(P)     Statement that the right of redemption has been waived by all owners of redemption: At ¶ 25 of the mortgage, mortgagor waived any and all rights of redemption.  The real estate is not residential.

(Q)     Facts in support of request for attorneys' fees and of costs and expenses:  Attorneys' fees and costs are expressly promised in *Commercial Mortgage*, Exhibit J, ¶ 32; *Promissory Note* No. 56270-2, Exhibit B, p. 1; *Variable Rate Commercial Promissory Note,* Exhibit F, p. 2 ¶ 10; *Commercial/Agricultural Revolving or Draw Note,* Exhibit H, p. 2 ¶ 10;  *Business Account Agreement,* Exhibit K, p. 2; and *Commercial Guaranty,* Exhibit L, p. 2.

(R)     Facts in support of a request for appointment of mortgagee in possession or for appointment of receiver, and identity of such receiver, if sought:  Lender is granted the right to possession pre-judgment and pre-sale under ¶ 23 of the Mortgage.  The real estate is not residential.

(S)     Offer to mortgagor in accordance with Section 15-1402 to accept title to the real estate in satisfaction of all indebtedness and obligations secured by the mortgage without judicial sale, if sought: Not applicable.

(T)     Name or names of defendants whose right to possess the mortgaged real estate, after the confirmation of a foreclosure sale,

- 26 -

<u>is sought to be terminated and, if not elsewhere stated, the facts in support thereof</u>: Gary A. Gerberding and Premier Data Solutions, Inc.   Purchaser at a confirmed sale is entitled to possession 30 days after confirmation under 735 ILCS 5/15-1508(g).   Until then, plaintiff is entitled to possession under ¶ 23 of the Mortgage.   The real estate is not residential.

REQUEST FOR RELIEF:   Plaintiff requests:

(i)      A judgment of foreclosure and sale.

(ii)     An order granting a shortened redemption period.

(iii)    A personal judgment for a deficiency.

(iv)    An order granting possession.

(v)     An order placing the mortgagee in possession or appointing a receiver.

(vi)    A judgment for attorneys' fees, costs and expenses.


August 1, 2005                              LAW OFFICE OF TERRY SHARP, P.C.


                                                    By: _/s/ Terry Sharp_____


Terry Sharp
John T. Hundley (IL ARDC No. 3123403)
LAW OFFICE OF TERRY SHARP, P.C.
1115 Harrison – P.O. Box 906
Mt. Vernon, IL  62864
618-242-0246
*Attorneys for the Plaintiff*


John\Centrue\GerberdingComplaint

**JS 44** (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS—CENTRUE BANK, an Illinois commercial bank | DEFENDANTS—GARY A. GERBERDING, an individual; PREMIER DATA SOLUTIONS, INC an Illinois corporation; UNKNOWN OWNERS and NON RECORD CLAIMANTS |
|---|---|
| (b) County of Residence of First Listed Plaintiff **Kankakee** (EXCEPT IN U.S. PLAINTIFF CASES) | County of Residence of First Listed Defendant **Kankakee** (IN U.S. PLAINTIFF CASES ONLY) NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED. |
| (c) Attorney's (Firm Name, Address, and Telephone Number) Law Office of Terry Sharp, P.C., P.O. Box 906, Mt. Vernon, IL 62864 618-242-0246 | Attorneys (If Known) |

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 830 Patent | ☒ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | **PERSONAL INJURY** | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Med. Malpractice | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | ☐ 365 Personal Injury - Product Liability | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | **CIVIL RIGHTS** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 441 Voting | **PRISONER PETITIONS** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 443 Housing/Accommodations | **Habeas Corpus:** | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 444 Welfare | ☐ 530 General | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | | |
| **PERSONAL INJURY** | ☐ 446 Amer. w/Disabilities - Other | ☐ 540 Mandamus & Other | | |
| ☐ 340 Marine | ☐ 440 Other Civil Rights | ☐ 550 Civil Rights | | |
| ☐ 345 Marine Product Liability | | ☐ 555 Prison Condition | | |
| ☐ 350 Motor Vehicle | | | | |
| ☐ 355 Motor Vehicle Product Liability | | | | |
| ☐ 360 Other Personal Injury | | | | |
| ☐ 370 Other Fraud | | | | |
| ☐ 371 Truth in Lending | | | | |
| ☐ 380 Other Personal Property Damage | | | | |
| ☐ 385 Property Damage Product Liability | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
18 U.S.C. §1964(c)

Brief description of cause:
fraud, racketeering & other wrongful misconduct

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ 1,657,161.51

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY

(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE 8/1/05

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____